UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE FAMANIA, GILBERTO FAMANIA, MYRNA FAMANIA, and IDALIA ALERS,<br><br>    Plaintiffs,<br><br>    v.<br><br>WHITNEY PLACE AT NATICK, INC.,<br>    Defendant. | CIVIL ACTION No. 05-10996-WGY |

**DEFENDANT'S REPLY BRIEF**

Defendant, Whitney Place of Natick, Inc. ("Whitney Place") submits the following Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

**I.   This Court Has Found The Whitney Place English Language Rule Lawful. Plaintiffs Have Failed To Meet Their Burden Of Proof Or Their Obligation To Demonstrate The Existence Of A Genuine Issue Of Material Fact That They Are Victims Of Disparate Treatment**.

In response to the Defendant's Motion to Dismiss, in October 2005, this Court found the Whitney Place English Language Rule lawful.[1]  Reading the allegations most favorable to Plaintiffs, this Court stated the only issue before the court is disparate treatment.[2]  Plaintiffs have failed to meet their burden of proof to establish a prima facie case on that issue, or any triable issue of fact.

---

[1] As expressly shown in the Equal Employment Opportunity Commission's Compliance Manual, Plaintiffs' admit "Title VII permits employers to adopt English only rules under certain circumstances. As with any other workplace policy, English only rule must be adopted for nondiscriminatory reasons. An English only rule would be unlawful if it was adopted with the intent to discriminate on the basis of national origin." There is no evidence that the rule was adopted for a discriminatory reason.
Whitney Place is an Alzheimer's center. For a further discussion of this disease, See e.g. Alzheimer's Disease Fact Sheet (Alzheimer's Disease Education and Referral Center (September 2005); The Journey of Alzheimer Disease (Arlene Huhn) (July 1, 2005); Caring For People With Alzheimer's Disease: A Manual For Facility Staff (AHCA, 2001).

[2] From the onset, Defendant has objected that the Complaint was improperly filed and pled no facts supporting any allegation of unlawful discrimination. The Opposition is equally vague.

From the inception, Defendant has argued that Plaintiffs have failed to set forth any facts (or law) to support a claim. As the First Circuit stated in Lawton v. State Mutual Life Assurance Co. of America, 101 F.3d 218, 222-223 (1st Cir. 1996), although the record must be interpreted "in the light most hospitable to the nonmoving party," it is equally true that "the nonmovant has a corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." When a motion for summary judgment involves an issue on which the plaintiff has the burden of persuasion, "the nonmovant must 'produce specific facts, in suitable evidentiary form,'" to show the existence of a triable issue of material fact. Id. Here, like in Lawton, Plaintiffs failed to offer specifics. The court should grant summary judgment to the Defendant; See also Ayala-Gerena v. Bristol Myers-Squibb Co., F.3d 86, 94 (1st Cir. 1996), ("In order to survive the 'swing of the summary judgment axe' . . . the nonmoving party must produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must granted." (citation omitted))[3]

**II.    This Case Is About Language, Not National Origin. Language Is Not A Protected Classification Within The Scope Of Title VII.**

In Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 90, 94 S.Ct. 334 (1973) the United States Supreme Court noted the following in regard to the legislative history of "national origin" protection under Title VII of the Civil Rights Act:

> The only direct definition given the phrase 'national origin' is the following remark made on the floor of the House of Representatives by Congressman Roosevelt, Chairman of the House Subcommittee which reported the bill: 'It means the country from which you or your forebears came…You may come from Poland, Czechoslovakia, England, France, or any other country'. 110 Cong. Rec. 2549 (1964). Espinoza, 414 U.S. at 89, 94 S.Ct. at 337.

---

[3] Plaintiff's reliance on Swierkiewicz v. Sorema, N.A, 534 U.S. 506 (2002) is misapplied. Swierkiewicz is a case involving a failure to state a claim under Fed. R. Civ. P. 8(a)(2), not Fed. R. Civ. P. 56.

As previously noted, for purposes of Title VII, Congress specifically defined "Puerto Rico" as a "state," not a nation. Plaintiffs do not challenge this fact. Further, Plaintiffs have offered no evidence to support their theory that citizens born in Puerto Rico are entitled to "national origin" protection under Title VII, anymore than a citizen of Massachusetts could allege national origin discrimination against, for example, a South Carolina employer who may have referred to him as a "Yankee."[4]

**III.   Plaintiffs' Claim Is Not Based Upon Statute But An Alleged Violation of EEOC Guidelines Or Regulations. The Statute Does Not Protect Language. Neither The Regulations NOr Guidelines Are Controlling On This Court. The Chevron Doctrine Bars The EEOC And Plaintiffs From Expanding The Statue's Scope.**

Title VII of the Civil Rights Act of 1964 does not address "language" as a protected class. Plaintiffs' reliance upon EEOC regulations is misplaced. The regulations are not binding on the court. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) *cited in* Cosme v. Salvation Army, 284 F. Supp. 2d 229 (D. Mass, 2003).

More to the point, in Espinoza, supra, the U.S. Supreme Court would not expand the term "national origin" to encompass "citizenship" and rejected EEOC Guidelines in support of such position. Likewise, the term "national origin" should not be expanded to encompass language, especially in a case such as this where there is no evidence of any animus directed at United States citizens living in Massachusetts, born in Puerto Rico.

**IV.   Plaintiffs Fail To Demonstrate Any Unlawful Conduct Occurred Within The Statute of Limitations Or Outside The Rule. There Is No Evidence Of Disparate Treatment.**

Plaintiffs failed to establish any acts of disparate treatment within the 300 day statute of limitations. For example, Gilberto Famania complains of alleged misconduct that occurred more than 300 days prior to the EEOC filing (Opposition, p. 2). None involve disparate treatment.

---

[4] Not to be confused with the New York Yankees.

Each of these incidents is outside the statute of limitations. Further, all the alleged incidents occurred within patient access areas.

The testimony of Gilberto Famania regarding alleged "incidents" is suspect. At his deposition, Gilberto Famania could not recall the facts and circumstances regarding his termination from Whitney Place; although Gilberto contested his termination in an effort to obtain unemployment benefits, was initially denied benefits, requested a hearing before the state agency, demanded a translator (although fluent in English), participated in the hearing, and received a final denial letter at his home, Gilberto now has no memory of the reason for his termination (G. Famania Tr. 55). See also Decision of Division of Employment and Training, attached as Exhibit A. In contrast, Gilberto claims to remember the dates he was "reminded" to speak English in residential areas of Whitney Place. While he may have memory of these events, none occurred within 300 days of the filing of the charge. (See G. Famania Tr. 14-25 cited by Plaintiffs in their Opposition.) Dates in 2001 are beyond 300 days and are insufficient to state a claim. Further, the alleged incidents all occurred in resident/patient access areas.

Jose Famania, 47 years old, never worked at any job prior to or since Whitney Place, denied knowing English but studied English for ten (10) years at a Catholic School in Puerto Rico. (J. Famania Tr. 6-9, 28-15). Jose references no act of disparate treatment and not a single incident outside a patient access area.

Myrna Famania[5] complains of a 1997 or 1998 incident as she entered the lobby, a resident access area, after punching a time clock.

---

[5] Myrna Famania also exclusively alleged incidents occurring in resident areas on the Alzheimer wing on the third floor of the center (M. Famania Dep. Tr. 7-9, 10-11, 20-21). Myrna exclusively worked in Residential Areas (Larouge Dep., Tr. 33-17). Likewise, Idalia Alers alleges an incident occurring in 2002 on the patient wing as she prepared a room for a new patient (Alers Dep., Tr. 17); the third floor resident dining hall (Alers Dep., Tr. 18-21) serving breakfast to an Alzheimer's patien on the third floor. Both she and a person not of Puerto Rican heritage received a reminder not to speak Spanish (Alers Dep., Tr. 22-23).

The Opposition fails to identify an alleged acts of disparate treatment occurred within the statute of limitations.

**V.    The Plaintiff Has Failed To Prove, Or Even Allege, Any Evidence Of Disparate Treatment.**

As noted in Defendant's main Motion for Summary Judgment and above, there is no evidence of disparate treatment. Plaintiffs cite none in their Opposition.

**VI.    Assuming *Arguendo* Language Is A Protected Class Within Title VII, Bilingual Employees Are Not Within Any Protected Class. Plaintiffs Speak English Sufficient To Perform Their Jobs.**

As Plaintiffs concede (Opposition p. 1), they were either fluent in English or understood English sufficient to perform their jobs. Bilingual employees are not denied a privilege of employment by an English-only policy. See Garcia v. Spun Steak Co., 998 F.2d 1480, 1488 (9th Cir. 1993); Garcia v. Gloor, 618 F.2d 264, 272 (5th Cir. 1993); Kania v. Archdiocese of Philadelphia, 14 F. Supp. 2d 730, 735-36 (E.D. Penn. 1993).[6]

**VII.    Adverse Action Is An Element Of The Prima Facie Case. Plaintiffs Fail To Challenge Whitney Place's Position That Reminders to Plaintiffs in Patient Access Areas To Speak English Is An Adverse Employment Action.**

Plaintiffs fail to produce any evidence the Whitney Place English Language Policy resulted in an adverse employment law action toward either of them individually or commonly. Adverse action is a necessary element to sustain a prima facie case of national origin discrimination. Plaintiffs fail to distinguish a single "no adverse action" case cited by Whitney Place.[7]

---

[6] Three (3) of the four (4) Plaintiffs are no longer employed at Whitney Place.

[7] Plaintiffs' Reliance on Peterson v. Hewlett Packard, 358 F.3d 599 (9th Cir. 2004) is unavailing. At page 603 of the Peterson case, the Ninth Circuit adopted the precise prima facie case put forward by Defendant.

> We analyze the evidence that Peterson presents in support of his disparate treatment claim under the McDonnell-Douglas burden-shifting framework which he invokes. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, Peterson has the burden of establishing a

In this case Plaintiffs are (1) as United State citizens born in Puerto Rico, bilingual, or possessing sufficient English to perform other duties, not in a protected class; (2) three of the four Plaintiffs were either terminated or are physically unfit for work; and (3) none suffered any adverse employment action.  In addition, there are no facts supporting a claim Plaintiffs in a protected class were treated differently.

**VIII.   Plaintiffs Have Failed To Identify Any Animus Directed By Whitney Place Supervisors Or Managers Toward United States Citizens Born in Puerto Rico.**

Plaintiffs' Opposition is devoid of any allegation Whitney Place supervisors or managers directed any animus toward Plaintiffs because they are United States citizens born in Puerto Rico or treated them differently because they are United States citizens born in Puerto Rico.

**IX.   Plaintiffs Have Not Demonstrated Any Improper Purpose In Whitney Place Applying Its Lawful Rule.**

The English Language Rule was found by this court to be lawful.  In applying the rule, Plaintiffs cite no evidence the Rule was enforced for an improper purpose or motivation. Gonzalez v. City of Minneapolis, 267 F. Supp. 2d 1004 (D. Minn. 2003) *affirmed on other grounds* 107 Fed. Appx. 702, 2004 WL 1873243 (8th Cir. 2004).

As to Mr. Larouge's testimony regarding the rationale for the rule, Mr. Larouge testified as follows:

> Q.   Are you familiar with an employee by the name of Louise Pecora?
> A.   Louise Pecora?
> Q.   Is it Louise Pecora?  Are you familiar with her?
> A.   Yes.  She is one of my colleagues.
> Q.   And have you ever had occasion to speak to Ms. Pecora regarding your employees speaking Spanish?

---

prima facie case by showing that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.  (Citations omitted) Id. at 603.

#571312                                          -6-

> A. I'm sure Louise has talked to me about that and other things when it comes to – she hears a lot in her neighborhoods, and she, you know, will inform me on what my employees are doing or not doing.
> Q. Have you had occasion to speak to her regarding any violations of the English language rule?
> A. I'm sure she's mentioned, you know, so and so is speaking Spanish or some other language on the Alzheimer's unit.
> Q. Why are you sure?
> A. Why am I sure? ***Because Louise pays attention to her very sensitive population, and Louise does her own courses on having us understand the ramifications of changing routines in an Alzheimer's world. It doesn't take much to set residents off. So she's very sensitive to that, more so than we are. That's her field of expertise so –***
> Q. Do you ever have occasion to interact with the residents?
> A. Yes, I do.

Larouge Tr. 41-42 (emphasis added)

**X. The Employee Handbook Provided For An EEOC Grievance Procedure. None Of The Plaintiffs Utilized The Grievance Procedure. Therefore, They Fail To State A Claim.**

Although repeatedly asked whether they articulated a complaint or grievance regarding the English Language Rule, no Plaintiff ever voiced such a complaint to management. As such, Plaintiffs fail to state a claim. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) and Farragher v. City of Boca Raton, 524 U.S. 775 (1998).

**XI.     Conclusion**

For the reasons stated in the Main Motion for Summary Judgment and this Reply, this case should be dismissed as a matter of law.

Respectively submitted,

WHITNEY PLACE AT NATICK, INC.

By its attorneys,

/s/ Richard D. Wayne _____
Richard D. Wayne, BBO #518200
Brian E. Lewis, BBO #643717
Hinckley Allen Snyder, LLP
28 State Street
Boston, MA  02109-1775

Dated:  February 21, 2006

**CERTIFICATE OF SERVICE**

I, Richard D. Wayne, certify that the foregoing *DEFENDANT'S REPLY BRIEF* will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered on February 21, 2006.

/s/ Richard D. Wayne_____

MASSACHUSETTS
DIVISION OF
EMPLOYMENT
AND TRAINING

                                                  **Hearings Department**
                                                  **West Central Regional Office**
                                                  **88 Industry Avenue**
                                                  **Springfield, MA  01104**
                                                  **Phone: 413-452-4700**
                                                  **Fax: 413-784-1309**
                                                  **TDD: 1-800-438-0471**

## DECISION

                                                  **DOCKET NUMBER: 330179**

**I.    STATUTORY PROVISION(S) AND ISSUE(S) OF LAW:**

MGL Chapter 151A, §§25(e)(1) & (e)(2) - Whether there is substantial and credible evidence to show that the claimant left work voluntarily with good cause attributable to the employer or its agent, or involuntarily for urgent, compelling and necessitous reasons, or by discharge for deliberate misconduct in wilful disregard of the employing unit's interest, or for a knowing violation of a reasonable and uniformly enforced policy or rule, unless the violation was the result of the employee's incompetence.

**II.    FINDINGS OF FACT:**

1. The claimant worked as a housekeeper for the employer, a nursing home, from about 2-00 to 4-10-02, at an ending rate of $9.50 per hour.

2. On 4-10-02, the employer discharged the claimant for using obscene language directed toward the Director of Environmental Services.

3. The employee handbook has a section on standards governing conduct and behavior. Included in that section is a list of behaviors that call for discipline.

4. The list includes the following: "1. Refusing a job assignment or the directive of any supervisor or manager or engaging in insubordination." "15. Negligence in the performance of assigned job duties." and "19. Using obscene, abusive, or threatening language."

5. The handbook calls for progressive discipline consisting of oral warnings, written warnings, and suspension or discharge, depending on the severity of the infractions. Discipline is at the discretion of the employer, and the employer reserves the right to skip disciplinary steps, depending on the circumstances.

Commonwealth of Massachusetts
Jane Swift, Governor    Angelo Buonopane, Director of Department of Labor & Workforce Development
John A. King, Director Employment and Training

WPN 00963



DOCKET NUMBER: 330179

14. As they were leaving, the claimant asked the employer not to look at him or touch him. The
15. claimant continued calling the employer names as he was escorted down the hall and out the building. When they reached the door, the Director of Environmental Services told the claimant to have a good life. The employer remained in the building and the claimant left.

### III.  CONCLUSIONS & REASONING:

Both the claimant and the employer attended the hearing.

The claimant did not voluntarily leave his job. Therefore, Section 25(e)(1) does not apply to this matter.

In a Section 25(e)(2) case, the burden of proof is upon the employer to establish by substantial and credible evidence that the claimant was discharged for a knowing violation of a reasonable and uniformly enforced policy or rule, or for deliberate misconduct in wilful disregard of the employer's interest.

Given the facts as stated above, there is substantial and credible evidence to establish that the claimant was discharged for deliberate misconduct in wilful disregard of the employer's interests, rather than for a knowing violation of a reasonable and uniformly enforced policy or rule. The employer discharged the claimant for using obscene language directed toward the employer. The claimant was fully aware of his employer's reasonable expectation, that he not call the employer obscene names, from basic common knowledge. The claimant did not meet the employer's expectations. During a meeting to discuss the claimant's performance, he engaged in obscene name-calling. The claimant denied calling the employer any names until after the termination. That denial was not deemed credible. No mitigating circumstances were established for the claimant's behavior.

The employer's testimony relative to the events and conversation leading up to the discharge, as well as immediately after, was specific, detailed, sincere, and believable. The claimant's credibility was badly damaged by his blanket denial of any prior discussions about his performance. The claimant's witness was not credible at all. His testimony appeared to be coached and rehearsed. He recalled vivid details about a conversation that he was not present for, but could not recall if he called the claimant or if the claimant called him a couple days later.

In view of the facts, the claimant is subject to disqualification and denied benefits.

Commonwealth of Massachusetts
Jane Swift, Governor   Angelo Buonopane, Director of Department of Labor & Workforce Development
John A. King, Director Employment and Training

WPN 00964



DOCKET NUMBER: 330179

### IV.   DECISION:

The determination is affirmed. Benefits are denied beginning with the week ending 4-13-02 and until the claimant has eight weeks of work and in each of said weeks earns an amount equal to or in excess of his weekly benefit rate.

**HEARINGS DEPARTMENT**

BY:   Hildie Blunt-Osley/llr
**REVIEW EXAMINER**

**COPIES TO:**

Claimant
Claimant's Attorney
Employer
Employer's Representative
Local Office
File

Commonwealth of Massachusetts

Jane Swift, Governor    Angelo Buonopane, Director of Department of Labor & Workforce Development
John A. King, Director Employment and Training

WPN 00965